**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Cr. No. 97-01117 ACK-2** |
| | ) |
| **HECTOR LOPEZ,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

For the reasons set forth herein, the Court GRANTS Petitioner Hector Lopez's Motion for Compassionate Release, ECF No. 340, and sentences Petitioner Hector Lopez to a term of TIME SERVED, with supervised release for five years to follow on the terms previously imposed.

## BACKGROUND

On October 8, 1997, Petitioner Hector Lopez was charged by a federal grand jury with conspiracy to distribute more than 1 kilogram of heroin, relieving and assisting co-defendant Francisco Davalos in the use and possession of a firearm during and in relation to a drug-trafficking crime which resulted in the murder of Arturo Renteria-Hernandez, and carrying and using a firearm during and in relation to a drug-

trafficking crime and causing the first degree murder of Renteria-Hernandez.  ECF No. 1.  The indictment was superseded to charge Lopez with: Count 1: Conspiracy to Distribute 1 kilogram or more of Heroin; Count 2: Conspiracy to Distribute more than 100 grams of Heroin; Count 4: Rendering Aid and Comfort to Francisco Davalos that Davalos Had Committed the Murder of Arturo Renteria-Hernandez; and Count 5: Carrying and Using a Firearm During and In Relation to the Count 2 Drug Trafficking Conspiracy, and in the Course of that Violation Committing the First Degree Murder of Armando Renteria-Hernandez.  ECF No. 207.

On September 25, 1998, following a 9-day jury trial, Lopez was convicted of all four counts.  ECF No. 247.  He was sentenced to a term of imprisonment of 151 months for Counts 1, 2, and 4, to be served concurrently, and life imprisonment for Count 5, to run consecutive to the 151-month sentence for the other counts.  ECF No. 271.  Lopez was also subject to a detainer requiring him to submit to deportation proceedings if ever released.  Presentence Report, ECF No. 283.

Since 2015, Lopez has filed a handful of motions seeking a reduced sentence.  The Court has denied each of them. First, the Court denied Lopez's July 2015 motion under Amendment 782 to the United States Sentencing Guidelines because Lopez did not qualify for a reduction in light of his life sentence on

- 2 -

Count 5.  ECF Nos. 314, 315, 321.  Second, the Court denied Lopez's July 2016 motion—which was based on a Supreme Court decision invalidating a provision of the Armed Career Criminal Act ("ACCA")—because Lopez's sentence was not enhanced based on ACCA.  ECF Nos. 322, 328.  Third, the Court denied Lopez's June 2019 motion under the so-called Holloway Doctrine because the doctrine had not been adopted in this circuit, and the Court lacked authority under the doctrine in the face of the Government's opposition.  ECF Nos. 331, 337.

On June 8, 2020, Lopez filed the now-pending motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act (the "Motion").  ECF Nos. 340, 341.  Lopez argues that the significant changes he has made during his incarceration qualify as "extraordinary and compelling" reasons for reducing his sentence to time-served. Because Lopez has served more than 151 months in prison, he has completed his sentence for Counts 1, 2, and 4; the Court must thus consider whether to reduce his life sentence on Count 5.

The Government filed its opposition to Lopez's Motion on July 22, ECF No. 345, and Lopez filed his reply on August 6, ECF Nos. 346-349, and a supplemental reply on September 1, ECF

No. 350.[1]   The Court elects to decide the matter without a

hearing pursuant to District of Hawaii Local Rule 7.1.

## STANDARD

Lopez asserts that extraordinary and compelling

reasons warrant compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub.

L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  The relevant

provision provides in pertinent part:

> The court may not modify a term of imprisonment once
> it has been imposed except that—
>
> > **(1)**   in any case—
> >
> > > **(A)**   the court, upon motion of the Director
> > > of the Bureau of Prisons, or upon
> > > motion of the defendant after the
> > > defendant has fully exhausted all
> > > administrative rights to appeal a
> > > failure of the Bureau of Prisons to
> > > bring a motion on the defendant's
> > > behalf or the lapse of 30 days from the
> > > receipt of such a request by the warden
> > > of the defendant's facility, whichever
> > > is earlier, may reduce the term of
> > > imprisonment (and may impose a term of
> > > probation or supervised release with or
> > > without conditions that does not exceed
> > > the unserved portion of the original
> > > term of imprisonment), after
> > > considering the factors set forth in
> > > section 3553(a) to the extent that they
> > > are applicable, if it finds that—

---

[1] The Court will not consider the September supplemental reply, as it
was filed without leave of the Court.  See L.R. 7.2 (providing that, aside
from an opposition and reply, "[n]o further or supplemental briefing shall be
submitted without leave of court.").

> **(i)**      extraordinary and compelling
>              reasons warrant such a reduction
>
> ...
>
> and that such a reduction is consistent
> with applicable policy statements
> issued by the Sentencing Commission[.]

Thus, courts may grant compassionate release upon finding "extraordinary and compelling" reasons that are consistent with the applicable policy statements of the Sentencing Commission:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)** **(A)** Extraordinary and compelling reasons warrant the reduction;
>
>        . . .
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13. As to what constitutes "extraordinary and compelling reasons," the policy statement notes provide three specific examples: (A) a medical condition of the defendant; (B) age of the defendant;

- 5 -

and (C) family circumstances.  USSG § 1B1.13 n.1.  The notes
also provide a fourth, catch-all provision giving the Bureau of
Prisons ("BOP") Director discretion: "(D) Other Reasons.  As
determined by the Director of the Bureau of Prisons, there
exists in the defendant's case an extraordinary and compelling
reason other than, or in combination with, the reasons described
in subdivisions (A) through (C)."  <u>Id.</u>

        The Sentencing Commission's policy statement has not
been updated since Congress passed the First Step Act in 2018.
The failure to do so raises a question about the extent of a
district court's discretion in granting compassionate release.
Previously, motions for compassionate relief could only be
brought by the Director of the BOP.  With the passage of the
First Step Act, individual defendants may now move the court for
compassionate relief after meeting the exhaustion requirement.[2]
This change has divided courts on whether the catch-all
provision still requires deference to the Director of the BOP,
or whether courts may now exercise their own discretion to
determine what other reasons may qualify as extraordinary and

_____

        [2] Prior to this change, the BOP rarely sought compassionate release.
"From 1984 to 2013, an average of only 24 inmates were released each year
through BOP-filed motions," and it was against this backdrop that "Congress
passed and President Trump signed the First Step Act in 2018, a landmark
piece of criminal-justice reform legislation" that, among other things,
"remov[ed] the BOP's exclusive 'gatekeeper' role" and "explicitly sought to
improve the compassionate release process of the Bureau of Prisons."  <u>United
States v. Rodriguez</u>, 451 F. Supp. 3d 392, 395-96 (E.D. Pa. 2020) (citations
omitted).

compelling.  Hirano v. United States, No. CR 99-00465 ACK, 2020
WL 1861659, at *2 (D. Haw. Apr. 13, 2020).

　　　　The Court agrees with the "growing majority of
courts"—including a number of courts in this district—that "the
USSG policy statement does not limit the court's independent
assessment of whether extraordinary and compelling reasons
exist."  United States v. Hernandez, No. CR 13-00511(1) JMS,
2020 WL 3453839, at *4 (D. Haw. June 24, 2020); see also United
States v. Ogata, No. CR 12-00190 HG-01, 2020 WL 5579546, at *3
(D. Haw. Sept. 17, 2020); United States v. Cisneros, No. CR 99-
00107 SOM, 2020 WL 3065103, at *2 (D. Haw. June 9, 2020).  But
see United States v. Kealoha, No. CR 04-00265 DKW, 2020 WL
3735773, at *5 (D. Haw. July 6, 2020) ("declin[ing] to subscribe
to that rationale").

　　　　Courts exercising that discretion vary on what reasons
qualify as "extraordinary and compelling."  Congress has never
defined the term, except to state that "[r]ehabilitation of the
defendant alone shall not be considered an extraordinary and
compelling reason."  28 U.S.C. § 994(t).  That said, even though
it may not be the only factor, rehabilitation is still relevant
to determining whether compassionate release is warranted.  See
United States v. Millan, No. 91-CR-685 (LAP), 2020 WL 1674058,
at *7 (S.D.N.Y. Apr. 6, 2020) ("[L]egislators' use of the
modifier 'alone' evidences that they believed that

rehabilitation is relevant to the question of whether a sentence should be reduced and that rehabilitation, when considered together with other equitable factors, could constitute 'extraordinary and compelling reasons' for a sentence reduction."); see also United States v. Torres, No. 87-CR-593 (SHS), 2020 WL 2815003, at *8 (S.D.N.Y. June 1, 2020) (collecting cases).

Because Lopez is pro se, the Court construes his motion liberally. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); see also United States v. Seesing, 234 F.3d 456, 462 (9th Cir. 2000) ("Pro se complaints and motions from prisoners are to be liberally construed." (citations omitted)).

## DISCUSSION

At the outset, the Court notes that § 3582(c)(1)(A) includes an exhaustion requirement. The Government affirms that Lopez has met the exhaustion requirement, Opp. at 2-3, and the Court accordingly finds the exhaustion requirement satisfied. The Government otherwise opposes Lopez's Motion.

Considering the circumstances here, the Court finds that Lopez merits a compassionate release because of his extraordinary rehabilitation and because of numerous additional factors that favor compassionate release. The Court first

addresses Lopez's extraordinary rehabilitation and then turns to the additional factors supporting a compassionate release.

## I.   Lopez's Extraordinary Rehabilitation

Despite his life sentence, Lopez has used his nearly quarter-century of incarceration thus far to better himself through extensive investment in the rehabilitative programming available to him.[3/]

As some examples of Lopez's many achievements, Lopez has completed an eighteen-month life connections program with honors.  Lopez earned an "Inspiration Award" in connection with the program and received written feedback that he "may actually be the most reflective student in class based on [his] workbook journal entries."  ECF No. 331-3 & 331-4.  Lopez completed a non-residential drug abuse program through the BOP Psychology Services, and completed groups in areas such as anger management and criminal thinking.  ECF No. 331-9.  Lopez has participated in the rehabilitation program Reaching Out From Within, ECF No.

---

[3/] A court in the Southern District of New York has likewise commended the choice of a defendant who dedicated himself to rehabilitation "despite having had no realistic hope of release."  United States v. Millan, No. 91-CR-685 (LAP), 2020 U.S. Dist. LEXIS 59955, at *26-27 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to a defendant faced with a life sentence because: "Mr. Millan has done everything in his power to rehabilitate himself, as demonstrated by his genuinely exceptional accomplishments and meritorious prison record. He is remorseful and contrite and has fully accepted responsibility for his crimes. In the almost three decades that he has been incarcerated, Mr. Millan has conducted himself as a model prisoner and demonstrated exceptional character. He has developed into a man of great faith and a leader of the religious community at FCI Fairton and has demonstrated a commitment to working worth at-risk youth and suicide-prevention.").

331-10, and completed a twenty-eight week "Men of Influence"
class, ECF No. 331-15.

Lopez has also participated in the reentry committee
through which he takes classes and assists in the set up and
execution of reentry classes and events.  ECF No. 340 at 30, 35,
48.  Lopez is a current and active participant in Narcotics
Anonymous and Alcoholics Anonymous programs, id. at 30, 52, as
he has been for years, ECF Nos. 331-12 & 331-13.  He also
maintains universally good participation in the BOP's psychology
services.  ECF No. 340 at 32-33.

Lopez has further completed an extensive array of
educational programs.  These programs have covered topics
ranging from public speaking and American Sign Language, to
welding and operating heavy equipment, to money management and
economics.  ECF No. 340 at 30, 35-36; see also ECF No. 331-17.
He has obtained certifications from rehabilitative vocational
programs, including 150 hours spent obtaining a custodial
maintenance certification from a community college, and
obtaining a certification from a course in commercial driver's
licenses.  ECF No. 331-8.  Although his educational pursuits
have been stymied by the prison lockdown in response to the
COVID-19 pandemic, Lopez has striven to continue his growth and
education through self-study programs.  ECF No. 340 at 31, 35.

Even beyond these impressive certifications and sessions, Lopez represents that he has achieved a personal religious transformation.  He has completed certifications through a ministry correspondence program and bible study lessons.  Id. at 30-31, 39, 41-45.  He also completed numerous units in a faith-based correspondence school, ECF No. 331-5, in addition to completing other Christian Faith courses, ECF No. 331-14.  Lopez's religious dedication is not limited to education either; letters written on his behalf emphasize the personal transformation Lopez has found through religious practice.[4/]

Besides his educational and religious transformation, Lopez also acknowledges the substantial harm he caused and exhibits remorse.  His Motion addresses "the pain and mental [anguish] that [the victim's] family felt, and still feels, because of [his] selfish life choices."  ECF No. 341.  Lopez speaks to the regret he feels "for the day he made the poorest

_____

[4/] See ECF No. 341-1 at 4 (letter from Lopez's father stating, "Hector is an amazing man of faith who always is talking about God during our visits or conversations.  I feel very, very blessed to see my son so transformed by his faith in God."); 341-1 at 6 (letter from Lopez's sister, describing "how much my brother Hector has changed" and is now "a man of God" who "gives us advice[] and tells [us] to do good"); 341-1 at 8 (letter from friend referencing Lopez's "strong religious beliefs which makes him a person with a high attention to God"); 341-1 at 10 (letter from friend stating that "Lopez's faith in God is huge" and Lopez would frequently offer him blessings); 341-1 at 15 (letter from friend stating that Lopez now "accepts full responsibility for his decisions and has given his life to Jesus Christ," and that "God has changed him into a new man"); 341-1 at 16 (letter from brother, who did not see Lopez from the time of arrest until 2015, and in 2015 found Lopez to be "a changed person [who] talked to me about god and to behave," noting Lopez had "dedicated his life to Christ").

- 11 -

decision of his life," and although he states a desire to share his deep regret with the victim's family, because he "was advised to 'not' contact the victim's family to express his remorse to them, he has spent every day of his life trying to heal (families and individuals) and do everything he can to restore life." ECF No. 340 at 7-8. Although self-serving, these statements are buttressed by Lopez's already-extensive rehabilitation. The Court finds that Lopez's remorse, and his choice to direct that remorse towards helping others going forward, support his request for compassionate release.

"[R]ightly or wrongly, this country's criminal justice system is premised on the idea that a person can—and hopefully will—change after several years locked in prison." United States v. Ledezma-Rodriguez, No. 3:00-CR-00071, 2020 WL 3971517, at *6 (S.D. Iowa July 14, 2020). "The BOP tries to facilitate this through classes, case managers, reentry programs, time credits, and security classifications," which Lopez has taken full advantage of. Id. That, together with his spiritual and moral transformation, "appears to offer a success story that cuts in favor of extraordinary and compelling reasons supporting release." Id.

## II. Additional Grounds Supporting a Compassionate Release

Looking beyond Lopez's extraordinary rehabilitation, the Court finds that there are several additional grounds that

merit compassionate release in these circumstances.  Those include Lopez's youth at the time of his offense, that he does not have any prior criminal record, his minimal disciplinary record, his charity work, his informal support for other inmates, his services in helping at-risk youth, that he does not represent a danger to society, and the ongoing COVID-19 pandemic.

Lopez was only eighteen years old at the time of his crime.  "While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant."  Ledezma-Rodriguez, 2020 WL 3971517 at *7 (internal quotation marks and citation omitted) (granting compassionate release to a defendant with a life sentence after twenty years of incarceration, noting that "Defendant now is forty-seven years old, making him about half as likely to be convicted of a crime as when he was convicted of his latest offense" (citing U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders at 23 (2017) (hereinafter "Effects of Aging")).

Lopez's "relative youth at the time of the sentence" particularly supports compassionate release because his young age is coupled with an extremely long sentence.  McCoy v. United States, No. 2:03-CR-197, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020) (granting compassionate release to a defendant who was

a teenager with no relevant criminal history at the time of his
offenses and who had served over 17 years of his more than
thirty-five year sentence); United States v. Maumau, No. 2:08-
CR-00758-TC-11, 2020 WL 806121, at *5, 7 (D. Utah Feb. 18, 2020)
(granting compassionate release based in part on the young age
of the defendant who was twenty when arrested and twenty-four
when sentenced).

        Lopez also has no prior criminal record.  Presentence
Report, ECF No. 283.  In addition to making Lopez's situation
more compelling, this factor also decreases his likelihood of
recidivism.  See Effects of Aging at 3 ("criminal history
exerted a strong influence on recidivism").

        Despite being arrested at age eighteen and then
sentenced to life imprisonment, Lopez has maintained an
impressive prison record with only three minor infractions
during his twenty-three years of incarceration and no
infractions whatsoever for the past thirteen years.[5/]  ECF Nos.
340 at 17 & 331-7.  "[M]aintain[ing] a clear disciplinary
record" is "no minor feat in any prison," United States v.
Stephenson, No. 3:05-CR-00511, 2020 WL 2566760, at *7 (S.D. Iowa
May 21, 2020), and that Lopez maintained that record in the face

_____

        [5/] Lopez's three infractions are for an unauthorized use of mail in May
2000, for interfering with taking count and refusing to obey an order in
August 2005, and for possessing an unauthorized amount of cloth and
destroying property worth less than $100 in February 2008.  ECF No. 331-7.

of a life sentence strongly supports the likelihood that he would remain a rule-abiding individual if released.  <u>See</u> <u>Ledezma-Rodriguez</u>, 2020 WL 3971517 at *5 (granting compassionate release and noting that the "Defendant has not incurred a single disciplinary infraction since 2014, no small feat in a closely monitored federal prison"); <u>United States v. Adeyemi</u>, No. CR 06-124, 2020 WL 3642478, at *27 (E.D. Pa. July 6, 2020) (finding disciplinary record favored release based on no infractions in the past three years and only four minor infractions during the defendant's fourteen years in prison); <u>United States v. Marks</u>, 455 F. Supp. 3d 17, 27, 36 (W.D.N.Y. 2020) (granting compassionate release and noting the defendant's "clean disciplinary record for many years past," with no violations for the past seven years and no violent violations for the past ten years).

Lopez has also volunteered his time while in prison to charity work.  Most recently, Lopez has been volunteering with the community service project Ronald McDonald House Charities, through which he makes crafts items for donation to the charity program.  ECF No. 340 at 31, 47.  Prior to that, Lopez did similar work creating items for donation to a children's hospital.  ECF No. 331-19.

Lopez's involvement in the prison community does not end with his coursework and volunteer work.  Lopez also supports

other inmates on a personal level.[6/]   The mother of a fellow

inmate writes to the Court, "I do not have enough words to say

how [Lopez] helps everybody who needs his support, no matter[]

who this person is; no[] matter his condition, race, religion."

ECF No. 341-1 (Letter from Fanny Perez).  The letter goes on to

note conversations with other former inmates from the prison who

"say that Mr. Lopez is a very strong support to other inmates."

Id.  Indeed, another former inmate describes Lopez as "an

inspirational model not only for me but also for other young

inmates who had the fortune to be in contact with him."  ECF No.

341-1 (Letter from Leonardo Brito).  That individual goes on to

describe Lopez as someone who has a unique sense of empathy and

who would give other inmates the shirt off his back.  Id.

In addition, Lopez has exhibited a personal investment

in helping at-risk youth avoid his same mistakes.  Lopez

participated in a Victim Awareness Panel facilitated by a

professor at the University of Minnesota.  ECF No. 340 at 30,

50-51.  A thank-you card from the class indicates that Lopez

courageously and impactfully discussed his own background. Id.

Lopez himself also speaks positively of being able to "openly,

---

[6/] See United States v. Clausen, No. CR 00-291-2, 2020 WL 4260795, at *8
(E.D. Pa. July 24, 2020) (granting compassionate release and explaining that
"Clausen has spent the last twenty years of his life completing hundreds of
BOP educational programs, designing and teaching his own courses, serving as
a mentor to his peers and improving himself").

honestly, and transparently share [his] life story with college
students."  ECF No. 341.

Lopez also states that he wishes to have the
opportunity to give back to his community and feels that he is
in a position to make a difference, particularly through
continuing his public speaking.  Id.  Lopez states that "seeing
young people throw their lives away doing drugs and joining
gangs makes [his] heart ache," and he now feels "like [he] could
actually make a positive impact in the free world."  Id.  In
fact, a former inmate who wrote a letter on Lopez's behalf notes
that Lopez "always said he want[s] to become a crime prevention
specialist" helping "young people at risk."  ECF No. 341-1
(Letter from Leonardo Brito).

The Court also finds that Lopez appears to not
represent a danger to society.  The BOP lists Lopez's recidivism
level as the lowest-available option, "minimal," ECF No. 340 at
12, and in 2019, Lopez was transferred from a medium-security
facility (Leavenworth) to a low-security facility (Sandstone).
See Ledezma-Rodriguez, 2020 WL 3971517, at *8 & n.6 ("The BOP
generally gives defendants with life sentences a 'high' security
classification unless an administrator waives certain public
safety factors," and granting compassionate release noting that
"[t]he BOP appears to agree that Defendant has made progress"
since "Defendant entered the BOP with a 'high' security

- 17 -

classification, which recently was reduced to 'medium.'"). Although Lopez's crimes were serious and violent, those crimes occurred more than two decades ago and "[n]othing in [his] prison disciplinary record raises any concern about him having a continued propensity for violence." United States v. Clausen, No. CR 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020). To the contrary, as discussed above, Lopez has maintained a clean record for nearly thirteen years. The Court also gives weight to the fact that Lopez has no prior criminal history. Presentence Report, ECF No. 283 at 21.

The Court notes that Lopez will be deported to Mexico upon release. Opp. at 2 & Presentence Report, ECF No. 283.[7/] "[T]o the extent there are lingering public safety concerns, those are mooted by the fact Defendant would be deported following release." Ledezma-Rodriguez, 2020 WL 3971517, at *8.

Finally, the COVID-19 pandemic provides an additional basis supporting the release of inmates who do not present a danger to society. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." United States v. Hernandez, 451 F. Supp. 3d 301 (S.D.N.Y. 2020). "Other courts have documented the

---

[7/] This undermines the representation in Lopez's Motion and some of his support letters that Lopez could live with his parents in Minnesota and assist in caretaking needs for them. ECF No. 340 at 5.

devastating effect that the novel coronavirus has visited upon society in general and the criminal justice system in particular." United States v. Williams, No. 15-20462, 2020 WL 4040706, at *3 (E.D. Mich. July 17, 2020). Although "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner," United States v. Roeder, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (unpublished), the Court finds that it provides one more additional factor supporting Lopez's already-expansive efforts.

## III. Section 3553(a) Factors

The factors provided in § 3553(a) further counsel in favor of release.[8]

The first factor looks to "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). As alluded to above, this factor favors release based on Lopez's extraordinary rehabilitation, as well as Lopez's youth at the time of his offense, that he does not have any prior criminal record, his

---

[8] These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a)(1)-(7)).

minimal disciplinary record, his charity work, his informal support for other inmates, his services in helping at-risk youth, that he does not represent a danger to society, and the ongoing COVID-19 pandemic.

Lopez's decades in prison, considered alongside his commendable conduct during that time, also satisfies "the need for the sentence imposed." 18 U.S.C. § 3553(a)(2). Lopez has been imprisoned for close to a quarter of a century and the Court is satisfied that should serve as a deterrent to anyone considering committing the heinous crime Lopez was sentenced for. Although the sentencing guidelines remain at "life" for Lopez's crime, and although Lopez's co-defendant remains imprisoned, the Court finds that these concerns are outweighed by the other factors in Lopez's case, as discussed throughout this Order.[9] See 18 U.S.C. § 3553(a)(4)-(6) (considering the

---

[9] The Court notes that Lopez's co-defendant has not moved for release and it is thus not clear whether, considering their respective conduct since imprisonment, the Court would find the defendants' records to be "similar."

The Court further notes that, although numerous cases granting compassionate release rely on subsequent changes in sentencing laws not applicable in this case, a change in sentencing laws is by no means a requirement in granting compassionate release. See United States v. Torres, No. 87-CR-593 (SHS), 2020 WL 2815003 (S.D.N.Y. June 1, 2020) (granting compassionate release to two brothers who had been sentenced to life imprisonment without parole based on (1) rehabilitative efforts; (2) involvement in the community while incarcerated, including working with high risk youth, serving as unofficial mentors, acting as religious leaders, and indicating a commitment to further community service if released; and (3) COVID-19); United States v. Millan, 2020 U.S. Dist. LEXIS 59955 (S.D.N.Y Apr. 6, 2020) (granting compassionate release to a defendant who had been sentenced to life imprisonment without any discussion of subsequent changes in sentencing laws); United States v. Rodriguez, 451 F. Supp. 3d 392 (E.D. (Continued . . .)

kinds of sentence and sentencing range established, any pertinent policy statement, and the need to avoid unwarranted sentencing disparities among defendants with similar records).

## CONCLUSION

In sum, the Court finds that Lopez has demonstrated extraordinary and compelling reasons that warrant compassionate release based on his extraordinary rehabilitation and numerous additional factors—specifically, his youth at the time of his offense, that he does not have any prior criminal record, his minimal disciplinary record, his charity work, his informal support for other inmates, his services in helping at-risk youth, that he does not represent a danger to society, and the ongoing COVID-19 pandemic. The § 3553(a) factors also support compassionate release. Accordingly, Petitioner Hector Lopez's sentence is hereby reduced to TIME SERVED, with supervised

---

Pa. 2020) (granting compassionate release to a defendant who had been sentenced to twenty years based on rehabilitation and the COVID-19 pandemic, without any discussion of a subsequent change in sentencing laws).

The Court likewise notes that compassionate release is available even where a defendant was sentenced to life without parole. See, e.g., United States v. Luna, No. 90-CR-00392-PJH-1, 2020 WL 4696621 (N.D. Cal. Aug. 13, 2020); United States v. Tidwell, No. CR 94-353, 2020 WL 4504448 (E.D. Pa. Aug. 5, 2020); United States v. Torres, No. 87-CR-593 (SHS), 2020 WL 2815003 (S.D.N.Y. June 1, 2020); United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020).

release for five years to follow on the terms previously

imposed.[10]


              IT IS SO ORDERED.

              DATED:  Honolulu, Hawai`i, October 27, 2020.




                        _____
                        Alan C. Kay
                        Sr. United States District Judge


United States of America v. Lopez, Cr. No. 97-01117 ACK-2, Order Granting
Motion for Compassionate Release.

---

    [10] However, as previously noted, it is probable he will be deported to
Mexico on release from prison.  The terms of supervised release are as
follows.  Lopez has two special conditions of supervision: (1) that he is
prohibited from possessing any illegal or dangerous weapons; and (2) that he
must comply with the requirements of the Department of Homeland Security
(DHS), including submitting to deportation proceedings and not reentering the
U.S. without proper authorization.  Judgment, ECF No. 273.  The Court notes
that Mr. Lopez's judgment, entered in 1999, referred to compliance with the
Immigration and Naturalization Service (INS), and the Court now updates this
requirement to require compliance with the now-relevant agency, DHS.
    In addition, and as stated in the Judgment, Lopez must report to the
probation office in the district to which he is released within 72 hours of
release from the custody of the Bureau of Prisons; he shall not commit
another Federal, State, or local crime; he shall not possess a controlled
substance; and he shall not possess a firearm as defined in 18 U.S.C. § 921.
Judgment, ECF No. 273.  Furthermore, the standard conditions of supervision
entered in Lopez's Judgment are as follows:
  1. the defendant shall not leave the judicial district without permission
    of the court or probation officer;
  2. the defendant shall report to the probation officer and shall submit a
    truthful and complete written report within the first five days of each
    month;
  3. the defendant shall answer truthfully all inquiries by the probation
    officer and follow instructions of the probation officer;
  4. the defendant shall support his or her dependents and meet other family
    responsibilities;
  5. the defendant shall work regularly at a lawful occupation unless excused
    by the probation officer for schooling, training or other acceptable
    reasons;
  6. the defendant shall notify the probation officer ten days prior to any
(Continued . . .)

---

      change in residence or employment;

7. the defendant shall refrain from excessive use of alcohol;

8. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10. the defendant shall permit a probation officer to visit [at any time, at] home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11. the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Judgment, ECF No. 273.